In Equity.

FREDERICK F. PROCTOR AND FREDERICK F. PROCTOR, JR.

*vs.*

KEITH AND PROCTOR AMUSEMENT COMPANY, BENJAMIN F. KEITH
AND R. PAUL KEITH.

York.   Opinion May 10, 1912.

*Corporations.   Dissolution.   Disposition of Property.*
*Contracts.   Construction.*

In June, 1906, plaintiff and defendant organized a corporation in which each
held one-half the stock, and to which they assigned leases on theaters,
under an agreement that on any dissolution "the theaters, including the
personal property, good will, and business of each shall be retransferred
to the party from whom they were respectively received by the corpora-
tion;" and any new theaters leased should be taken by the highest bidder.
Plaintiff previously held a lease on the F. theater, expiring in 1912, subject
to termination on one year's notice in case of a sale.  In April, 1906, a
corporation, whose control by defendant was concealed by him, purchased
the theater and gave notice terminating the lease May 1, 1907.  Plaintiff's
assignment included his rights under this lease.  In 1907 a new lease was
given by defendant's company to the corporation first mentioned.  *Held*
that, on dissolution, it was not error to award a transfer of the lease on
the F. theater to plaintiff under the clause of the contract above quoted.

In equity.   On appeal by defendants.   Appeal dismissed.

Bill in equity praying that the affairs of the defendant, Keith and
Proctor Amusement Company, "a corporation duly established by
law and located at Kittery, in the County of York and State of
Maine," be wound up and the corporation dissolved.

The case is stated in the opinion.

*Verrill, Hale & Booth, and William F. S. Hart,* for plaintiffs.

*Libby, Robinson & Ives,* for defendants.

SITTING: WHITEHOUSE, C. J., SPEAR, CORNISH, KING, HALEY, HANSON, JJ.

WHITEHOUSE, C. J. This is an appeal from a final decree entered by a single justice in a suit in equity brought by the plaintiffs, who were owners of one-half of the stock of the defendant company, against the corporation, and the defendants, B. F. and A. Paul Keith, who were owners of the other half of the stock. It is alleged in the plaintiff's bill, dated December 30, 1910, that the defendant corporation, the Keith and Proctor Amusement Company, was organized in June 1906, by Benjamin F. Keith and Frederick F. Proctor, for the purpose of combining and operating under corporate ownership, for the common benefit of the stockholders, six theatres in New York and Jersey City, four of which including the Fifth Avenue Theatre had prior to that time been operated by Mr. Proctor and two of them by Mr. Keith; that there had been gross and fraudulent mismanagement of the affairs of the corporation, on the part of the defendants, B. F. and A. Paul Keith, the president and treasurer of the company, respectively, whereby its property was being wasted; that by reason of the friction between the two equally divided factions of stockholders, it was impossible to continue the business of the corporation without great injury to the rights of one-half of the stockholders, and that by reason of the premises, the purposes of the corporation could not be accomplished. They accordingly ask that the affairs of the corporation be wound up and the corporation dissolved.

The defendants filed an answer denying the charges of fraud and mismanagement on the part of Mr. Keith, but state that "by reason of the differences of opinion that have existed between the two interests which are equally divided," they joined in the prayer for a dissolution of the corporation; and thereafter under date of July 31, 1911, the parties entered into a stipulation whereby it was agreed that all of the theatres then under the corporate management should be restored to the party by whom they were respectively contributed, except the Fifth Avenue Theatre, the lease of which was to be renewed for five years from April 30th, 1911. Thus all of the important questions raised by the bill and answer were adjusted except that relating to the disposition of the Fifth Avenue Theatre. After hearing, a decree was entered by a single

justice "that the lease of the Fifth Avenue Theatre, which the defendant corporation now holds and which runs for a term of five years from May 1, 1911, shall be assigned and delivered forthwith as of the date of this decree, to the plaintiff, Frederick F. Proctor, together with all the personal property appurtenant thereto." The defendants took an appeal from this decree.

Prior to the organization of the defendant corporation, Mr. Proctor and Mr. Keith had for many years been individually and separately engaged in the theatrical business, each having the ownership of one or more theatres and the management and control of several others by virtue of leasehold interests. The lease of the Fifth Avenue Theatre which Mr. Proctor held from the Gilsey Estate when the defendant corporation was organized, did not by its terms expire until May 28, 1912; but it contained a provision that in the event of the sale of the property the landlord might terminate his tenancy by not less than one year's notice. The property was in fact sold April 25, 1906, to the International Amusement & Realty Company, which for convenience will be hereafter called the International Company, and notice was promptly given to Mr. Proctor of the cancellation of the lease, so that the term would expire May 1, 1907.

At that time this International Company was wholly under the control of Mr. Keith, but this fact appears to have been carefully concealed from Mr. Proctor, Mr. Keith being introduced to the attorney and one of the incorporators of the International Company under the assumed name of "Franklin."

Under these circumstances, in order to prevent the enormous expenditures resulting from the strenuous competition between the managers of vaudeville theatres, and in the belief that a renewal of the lease of the Fifth Avenue Theatre could doubtless be secured by the loyal assistance of Mr. Keith, an agreement was entered into between Mr. Keith and Mr. Proctor under date of June 27, 1906, to take effect as of June 4, for the consolidation under corporate management of the six theatres therein specified, for the term of ten years. The stipulations in that agreement specially involved in the consideration of the appeal now before the court, are found in the following provisions:

1. "A corporation shall be organized under the laws of the State of Maine with a capital of $100,000 to which corporation the

party of the first part shall assign his lease of the Union Square Theatre in the City of New York and shall lease his Bijou Theatre in Jersey City, now being altered, and shall assign his lease from Herz Brothers to the premises adjoining the same; and the party of the second part shall likewise assign his leases of the 23rd Street and Fifth Avenue Theatres in the said Borough of Manhattan and shall lease his 58th Street and 125th Street Theatres in said Borough. The Jersey City, 58th Street and 125th Street Theatres shall each be leased for a term of ten years, and said leases of the Union Square, 23rd Street and Fifth Avenue Theatres and the said Herz lease shall be assigned at the rentals and on the conditions stated in such leases which rentals shall be paid and conditions performed by said corporation, and the assignment of the Fifth Avenue lease shall be subject to the notice of cancellation served."

. . . . .

17. "With the theatres that are to be transferred to the corporation as herein provided shall be included all personal property appurtenant to said theatres belonging to the present proprietor."

18. "At the expiration of this contract by limitation or otherwise, the parties hereto shall and will, as stockholders and directors, vote and consent that the theatres, including the personal property, good will and business of each, shall be re-transferred to the party from whom they were respectively received by said corporation, and that the Board of Directors then in office shall be apointed trustees in liquidation, provided, however, that if any vacancy shall exist in the Board of Directors it shall be filled by the election of such director or directors as the parties hereto entitled to nominate shall designate; and said declarations of trust shall so provide."

19. "In the event that any new theatres shall be erected or leased or purchased under this agreement and the parties hereto shall no longer desire to jointly own or operate the same after the termination of this agreement as herein provided, the parties hereto shall have the exclusive right to purchase such theatre or theatres together with its and their good will, business and appurtenances, and they shall be sold respectively to such of the parties hereto as shall offer the highest price or sum therefor, unless the parties hereto shall at that time otherwise agree in writing."

In accordance with this agreement, the leases of the several theatres were assigned to the defendant corporation as of June 4, 1906. In the assignment by Mr. Proctor of the lease of the Fifth Avenue Theatre, is included all of the personal property in the theatre belonging to Mr. Proctor. It is also expressly stated that it is subject to the notice terminating the lease on the first day of May 1907, and it is described in the granting clause as "the lease of my Fifth Avenue Theatre." Under date of March 28, 1907, a new lease was given by the International Company to the defendant corporation for the term of four years from May 1, 1907, terminating April 30, 1911, at a rental of $51,000 per annum. This lease contained a covenant for a renewal lease at the same rent and on the same terms and conditions for a further period of five years from the 30th day of April 1911, "provided the same tenant shall elect to take such renewal lease and shall notify the said landlord of his intention so to do, in writing, on or before the first day of September, 1910."

Thereupon the defendant corporation was organized and commenced to transact business. At a meeting of the directors held July 12, 1906, it was voted to accept the offer of Mr. Keith to lease to the defendant corporation the theatres named in the agreement, in consideration of 500 shares of the stock of the corporation; and the offer of Mr. Proctor to lease the 58th Street and 125th Street theatres to the corporation and to assign to it "the leases, good will and business of his 23rd Street and Fifth Avenue Theatres" and to receive in payment therefor 500 shares of the stock of the corporation, was accepted on motion of Mr. Keith.

It is unnecessary to dwell upon the history of the Company's operations during the two or three years following its organization. There appear to have been some dissensions and differences of opinion in regard to the alterations and general management of the several theatres under the control of the Company. These minor difficulties, however, are not of primary importance in this case, which was finally reduced to the sole question whether the existing lease of Fifth Avenue Theatre should be assigned to Mr. Proctor under the agreement of June 27, 1906. But it is contended that the incidents which culminated in the commencement of this suit for a dissolution of the corporation and especially the active and persistent efforts of Mr. Keith to prevent the renewal of the lease of

the Fifth Avenue Theatre which would expire April 30, 1911, have marked significance upon Mr. Keith's attitude and understanding at the time in regard to the restoration of that theatre to Mr. Proctor in the event of a dissolution.

It has been seen that by a covenant in that lease, the defendant corporation, of which Mr. Keith was president and one of the executive committee, was entitled to a renewal lease for five years from the International Company, which was owned and controlled by Mr. Keith, provided notice in writing of its election to take such renewal lease should be given by the defendant corporation to the International Company, on or before the first day of September, 1910. The renewal of this lease had been the subject of discussion between the parties in the autumn of 1909, but on account of the prolonged absence of Mr. Keith, his coöperation in giving the required notice in writing of an election to take such a renewal lease, could not be obtained; and before leaving for his summer residence, Mr. Proctor acting as vice president and executive manager in the absence of Mr. Keith, sent such a notice in writing to the International Company under date of July 18, 1910. This notice appears to have been duly received by Mr. Keith as owner of the International Company, but it was not acknowledged until October 21, 1910, seven weeks after the time had expired for giving a renewal notice. In this reply a request is made for an extract from the records and by-laws showing that the notice was duly authorized. The next day Mr. Keith as president of the defendant corporation, wrote a letter to the International Company owned by him interposing the technical objection that the notice received the day before was not a legal one because not authorized by the board of directors or the executive committee. October 31, he made the suggestion that the Company must not be without a tenant, and November 17, he stated that the Fifth Avenue Theatre might be put on the market to be leased to the highest bidder. It must be admitted that the correspondence between the parties in regard to a renewal of this lease, considered in relation to the fact that these two parties were equal stockholders and both officers of the defendant corporation, discloses a continual resort on the part of Mr. Keith to disingenuous endeavors to disguise his ownership of the International Company in the hope of creating a belief in the mind of Mr. Proctor that he was dealing with one occupying

the position of a partner in business and not with a hostile competitor.    It is claimed in behalf of the plaintiff Proctor and of the defendant corporation, that in pursuing this course, Mr. Keith was endeavoring to take advantage of his position to deprive the corporation of its most valuable asset in order to obtain control of the Fifth Avenue Theatre for his personal benefit, it being admitted that Mr. Keith was the sole owner of the International Company, which was the lessor of that theatre.

It is true that after a complaint was entered in the New York Court charging Mr. Keith with devising an unjust scheme to deprive the defendant corporation of its renewal lease, Mr. Keith was finally induced to enter into the stipulation hereinbefore mentioned, agreeing to a renewal of the lease and to a dissolution of the corporation.    But it it argued that Mr. Keith would never have resorted to such questionable methods to prevent a renewal of the lease, unless he had then understood that in the event of a dissolution of the defendant corporation, the Fifth Avenue Theatre, with its existing lease for five years, yielding a total rental of $255,000, would pass to Mr. Proctor under the terms of the agreement of June 27, 1906.

The respective contentions of the parties in regard to the proper interpretation of the express terms of this agreement of June 27, and especially of the provisions of paragraph 18 hereinbefore quoted, will now be more critically examined and considered.

It has been seen that in paragraph 18 of that agreement, it is provided that in the event of a dissolution of the corporation "the theatres, including the personal property, good will and business of each, shall be re-transferred and assigned to the party from whom they were respectively received by the corporation," and in paragraph 19 it is provided that in case "any new theatres shall be erected or leased or purchased under this agreement, and the parties hereto shall no longer desire to jointly own or operate the same after the termination of this agreement  .    .    .    .    they shall be sold respectively to such of the parties hereto as shall offer the highest price or sum therefor."

The question now before the court is whether the decree of the single justice that the present lease of Fifth Avenue Theatre shall be "assigned and delivered" to Mr. Proctor is clearly wrong.    It is not in controversy that in determining that question, this court will

be governed by the terms of the above agreement so far as they are applicable, either when considered by themselves or construed in the light of the circumstances, and if there is nothing in the agreement controlling the disposition of the present Fifth Avenue lease, that the rule of the common law must apply and the lease be treated as a corporate asset to be disposed of for the benefit of all the stockholders.

It is contended in behalf of the defendants that when the terms of paragraph 18 of this agreement are brought into contact with the surrounding circumstances a latent ambiguity is developed respecting the meaning to be ascribed to the word "theatres" in the clause "the theatres shall be re-transferred," &c., and this ambiguity is removed by an examination of the extrinsic evidence in the case showing the surrounding circumstances, the situations and conduct of the parties at that time, and the practical construction subsequently given to the contract by the parties themselves. It is contended that when the terms of the contract are thus examined and interpreted in the light of the subject matter to which they relate, the word "theatres" in the clause mentioned must be deemed to have been employed to designate the leasehold interests which were transferred under the agreement and to be re-transferred.

It has been seen that by reason of the sale of the Fifth Avenue Theatre to Mr. Keith's International Company, the lease of that Theatre actually transferred by Mr. Proctor to the defendant corporation under the agreement in question, was terminated May 1, 1907, and that the renewal lease in controversy expiring April 30, 1916, was not the identical lease which was in fact transferred to the defendant corporation by Mr. Proctor. It is accordingly insisted in behalf of the defendants, first, that the disposition of that lease is not controlled by paragraph 18 of the agreement, and that it must be treated as a corporate asset, second, that if it is not to be treated as a corporate asset, but is held to be within the provisions of paragraph 18, it must be treated as a lease received by the corporation from Mr. Keith, and third, that if Mr. Proctor's contention is sustained, and the Fifth Avenue Theatre is found to be a "Theatre" assigned by him to the corporation, he is only entitled to have it re-transferred to him for the term of the lease

which he assigned, viz, for the term of ten months and twenty-one days.

In the exhaustive argument of counsel for the defendants, no consideration appears to have been omitted which would have any legitimate tendency to support their contentions.

But the plaintiffs earnestly contend that in the clause in question relating to the re-transfer of "Theatres" the parties must be presumed to have intended what they have plainly expressed, and that since it is not allowable to "interpret" what has no need of interpretation, there is no reason for a construction of language which they claim is capable of only one meaning. They further insist that if the clause can reasonably be considered ambiguous, the extrinsic evidence only serves to strengthen their claim that in the contemplation of the parties the word "theatres" was not synonymous with the word "leases" and was not employed to designate simply those leasehold interests existing at the date of the agreement, June 27, 1906. They claim that when all of the evidence in the case is considered, four propositions are satisfactorily established; first, that the Fifth Avenue Theatre was received by the defendant corporation from Mr. Proctor, within the meaning of paragraph 18 of the agreement, by virtue of an assignment of his lease, and that he is now entitled to have it re-transferred to him under the same agreement; second, that the Fifth Avenue is obviously not a "new" theatre, within the meaning of paragraph 19 of the agreement, and is not to be sold to the highest bidder under that provision; third, that this theatre cannot be held to have been received from Mr. Keith simply because the existing renewal lease comes from the International Company, the stock of which is owned by him, and fourth, that this provision of the agreement was manifestly intended by the parties to cover the disposition of all of the property put into the corporation including the Fifth Avenue Theatre, as well as the 23rd Street and Union Square theatres, and that the Fifth Avenue Theatre cannot now be held to be a corporate asset.

In the elaborate discussion of these propositions by the counsel, another complete analysis of the evidence is presented from the plaintiff's point of view.

It may be true that the question presented for decision is not entirely free from difficulty and doubt, but after a careful reading

of the evidence and a patient study of the history of the case in the light of the luminous discussions of counsel, it is the opinion of the court that the decree of the single justice that the existing lease of Fifth Avenue Theatre shall be assigned to Mr. Proctor, is not shown to be clearly erroneous.

It cannot be doubted that by virtue of the stipulations in this contract, the parties intended to provide in the event of dissolution, for the disposition of all the theatres then under the management of the defendant corporation, and as far as practicable to restore each to the position he occupied before the corporation was organized. In specifying, in his letter to Mr. Keith, the Theatres claimed by him under the contract, Mr. Proctor mentions the Fifth Avenue, 23rd Street, 58th Street and 125th Street theatres and concedes to Mr. Keith the Union Square and Jersey City theatres; and in his reply Mr. Keith contests Mr. Proctor's claim only to the Fifth Avenue Theatre. But it appears that the Fifth Avenue, 23rd Street and Union Square were all in the same class, for the reason that the lease of each had expired after 1906 and a new lease given to the corporation. If it be held that the parties did not intend that the Fifth Avenue Theatre should be re-transferred to Mr. Proctor in dissolution of the corporation, the same construction applied to the Union Square and 23rd Street Theatres, would have prevented the transfer of these theatres to Mr. Keith and Mr. Proctor respectively, and thus one-half of the theatres would have remained undisposed of by the contract.

The conduct and declarations of the parties before the institution of this suit, with reference to the other two theatres, have important significance as to their understanding of the contract with respect to the Fifth Avenue. If Mr. Keith thus acquiesced in Mr. Proctor's view that the Union · Square Theatre should revert to Mr. Keith, and that the 23rd Street Theatre should revert to Mr. Proctor on dissolution, it is strong evidence that Mr. Keith understood that each theatre should be restored to the one from whom the corporation received it, although the term of the lease then existing may have been extended by a subsequent lease or leases. It is not controverted by the defendants that if the Fifth Avenue Theatre was received by the corporation from Mr. Proctor it should be re-transferred to him for at least a term equal to that of his unexpired lease at the time the corporation was organized.

But if the word "theatres" in paragraph 18 was intended to be synonymous with the word "leases" as claimed by the defendants, the logical conclusion would seem to be that as the lease of this theatre which the corporation received from Mr. Proctor, had expired, there would be nothing to be restored to him. But the word "theatres" and not the word "leases" was employed to express the understanding of the parties.

It has been noticed that paragraph 17 of the agreement provides that the re-transfer of the theatre shall include the personal property, good will and business of each, and it is worthy of mention that about two years before the corporation was organized, Mr. Proctor expended $7000 for new chairs for the Fifth Avenue Theatre and that the assignment of his lease expressly included all personal property in the theatre belonging to him. It does not seem probable that this personal property would have been included in the transfer without any stipulation for its return, unless he had understood that the theatre was to be re-transferred to him together with his chairs.

Again in Mr. Keith's efforts to refute the charge in the plaintiff's bill that he had so managed that the theatres which would revert to him were kept in good repair, while those which would revert to Mr. Proctor were not so maintained, he states in his affidavit that he had spent $87,000 on the Proctor theatres, including the Fifth Avenue, thus indicating that he understood that the theatre would revert to Mr. Proctor under the contract. Indeed when the contract is considered with reference to the circumstances existing at the time it was made, it is not improbable that Mr. Keith intended to have it so drawn that in the event of an early dissolution of the corporation, Mr. Proctor would be obliged to take the Fifth Avenue Theatre, since Mr. Keith would then receive a large rental for a theatre, which in June 1906 showed a loss of $30,000, and in June 1907, a loss of $54,000.

But a further discussion of the evidence in detail would be unprofitable. There was sufficient evidence to warrant the conclusion of the single justice that in the contract of June 27, 1906, the parties contemplated that each theatre should be "re-transferred and assigned" to the party from whom it was received, with the leasehold interest pertaining to it at the time of the dissolution of the corporation, and that the Fifth Avenue Theatre was received

from Mr. Proctor by the corporation within the meaning of the contract interpreted in the light of all the circumstances and the conduct of the parties.

The defendants' final suggestion that the decree from which this appeal was taken is inequitable, should be considered, if at all, in the light of the fact that Mr. Keith will receive a rental of $51,000 a year for this theatre during the remaining four years, $6000 a year more than was received from the Gilsey Estate.

The date fixed in the decree for the assignment of the existing lease to Mr. Proctor is sufficiently favorable to the defendants.

The certificate will therefore be,

*Appeal dismissed.*
*Decree below affirmed.*